COMMONWEALTH *vs.* INTOXICATING LIQUORS, William Darcy, claimant.

The description in a complaint under St. 1869, *c.* 415, § 44, of the building to be searched as "a certain building situated in the rear of the tenement situate on the southerly side of Front Street, and under the store of Alexander Pettigrew on said street," is not bad for ambiguity or insufficiency; it describes not a tenement on the south side of the street under Pettigrew's store, nor a one story shed at its rear built on to the main building, but does sufficiently describe a barn at the rear of the shed, and connected with it by a door.

COMPLAINT under St. 1869, *c.* 415, § 44, to the Police Court of the town of Gloucester, for a warrant to search for intoxicating liquor " kept and deposited by William Darcy, of said Glouces= ter, in a certain building situated in the rear of the tenement situate on the southerly side of Front Street, and under the store of Alexander Pettigrew on said street." The description of the premises given in the warrant was the same as that given in the complaint.

In the Superior Court, trial by jury having been waived, the case was heard by *Putnam,* J., without a jury. Before the hear-ing, the claimant moved to dismiss the complaint, because there was no sufficient description of the place to be searched, and be-cause the description was ambiguous. The motion was overruled.

At the hearing, the court found that the claimant occupied certain premises on Front Street, in Gloucester, as indicated by the plan in the margin. A, B, and C were all occupied by him.

A was a saloon, and was the basement of the main building. Over it was the store of Alexander Pettigrew. The front of the building was on the southerly side of Front Street. B was an I. to the main building. It was a shed, one story high, built on to the main building, having no door leading into it, but having a window, as shown at *b b.* This shed extended back to the building C. C was a barn, and was no part of the main building except that it was connected with B by a door, as shown at *a a.* It was used by Darcy as a storehouse for a portion of the liquors in question. In C were found 33 gallons of whiskey, contained in one barrel and three jugs; 84½ gallons of rum, contained in two barrels and one keg; 32 gallons of gin, contained in one barrel and four jugs; 16 gallons of wine, contained in one half barrel, and 15 gallons of lager beer, contained in two kegs. Other liquors were found in A and in B.

The court found that the liquors, so found, were kept in these places by Darcy, with the intention of selling them in the Commonwealth, contrary to law, but that the building C was the only building which answered the designation in the complaint; and therefore found that the liquors found in C should be forfeited, and that the liquors found in the other apartments should be returned. The claimant contended that on these facts the court could not, as matter of law, find that any of the liquors should be forfeited, and excepted to such finding.

*C. P. Thompson,* for the claimant.

*C. R. Train,* Attorney General, for the Commonwealth.

AMES, J. The only question raised upon this bill of exceptions is as to the sufficiency of the description of the place which the officer is directed to search. It is described as " a certain building situated in the rear of the tenement situate on the southerly side of Front Street, and under the store of Alexander Pettigrew on said street." This language imports that the place is a distinct and entire building, standing back from the street, and in the rear of some other structure. No one could reasonably infer from this description that the building in question is to be found under the store of Alexander Pettigrew. If it were, it might be a tenement or part of a building, but could hardly be an entire build

ing; and it would be on the street and not in the rear. The proper and obvious interpretation, and the only one which is consistent with all the facts of the case is, that it is situated in the rear of a tenement, which is described as being on the southerly side of Front Street and under the store in question; that is to say, it describes the position of a tenement, in the rear of which the building in question is situated.

But it is contended that although this view of the case may exclude the main building from the proposed search, it still leaves it ambiguous whether the officer was to search the barn or the shed. It appears, however, that the shed was but one story in height, and is not to be considered as a distinct building. We therefore must consider that the barn is sufficiently indicated as the place to be searched. *Exceptions overruled.*